UNITED STATES of America, Appellee,

v.

Mark Allen FORD, Appellant.

No. 94–3057.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 10, 1995.

Decided June 9, 1995.

Bernard S. Grimm, appointed by the court, Washington, DC, argued the cause for appel-

lant. With him on the briefs was Dennis F. Nee, Washington, DC.

Alan M. Boyd, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Thomas C. Black, and Andrew S. Levetown, Asst. U.S. Attys., Washington, DC.

Before: EDWARDS, Chief Judge, BUCKLEY and GINSBURG, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

This case involves the legality of a warrantless search incident to an in-home arrest, conducted without probable cause or reasonable suspicion. On the morning of January 10, 1992, six law enforcement officers, including a special agent of the FBI, arrived at the home of Mark Ford's mother with an arrest warrant for Ford. Upon entering the apartment, the FBI agent observed appellant in the apartment hallway and arrested him. The agent then conducted what the Government characterizes as a "protective sweep." He walked into the bedroom immediately adjoining the hallway in which appellant was arrested, purportedly to check for individuals who might pose a danger to those on the arrest scene. Once in the bedroom, the agent spotted a gun clip in plain view on the floor, and, although he realized that there were no people in the bedroom, the agent nevertheless continued to search. He lifted a mattress under which he found live ammunition, money, and crack cocaine, and he lifted the window shades and found a gun on the window sill. Ford moved to suppress this evidence, but the District Court held that the agent was justified in searching the bedroom, and that the evidence found therein was thus admissible. Ford was subsequently convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (1988) and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (1988).

Appellant challenges his convictions, contending that the District Court erred in failing to suppress evidence seized in violation of the Fourth Amendment. We agree. In *Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990), the Supreme Court held that "incident to [an] arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." In this case, the agent was justified in looking in the bedroom, which was a space immediately adjoining the place of arrest. And once in the bedroom, the agent could legitimately seize the gun clip which was in plain view. The agent could not, however, lawfully search beyond that— neither under the mattress nor behind the window shades—because these were not spaces from which an attack could be immediately launched, and there were no exigent circumstances justifying the warrantless search. We hold that the evidence taken from under the mattress and from behind the window shades was seized in violation of the Fourth Amendment and therefore was inadmissible at trial.

Once in the bedroom pursuant to a legitimate protective sweep under *Buie*, and once having seen the gun clip in plain view, the law enforcement officers had available reasonable measures to ensure their safety. They could have secured the bedroom and telephoned a magistrate for a search warrant, or they could have asked the owner of the apartment, appellant's mother, whether she would consent to a search of the apartment in lieu of waiting for a magistrate to issue a search warrant. This reasonable alternative to a warrantless search would have avoided the infringement of Fourth Amendment rights, without in any way jeopardizing the safety of the officers. However, the officers took no such reasonable measures. Because the search was unreasonable and hence unconstitutional, we reverse the judgment of conviction and remand the case to the District Court for such proceedings as may be appropriate.

I. BACKGROUND

On January 10, 1992, FBI Special Agent Stephen Godfrey received a call from the Metropolitan Police Department informing

him that officers in the Homicide Unit had a warrant for the arrest of appellant Mark Ford. The affidavit accompanying the arrest warrant alleged that appellant had shot a man after appellant and several accomplices robbed the man of cocaine. Agent Godfrey ran a criminal check on appellant and discovered that appellant previously had been arrested for forcible robbery, drug possession, and possession of a prohibited weapon.

At approximately 7 a.m. on January 10, 1992, Agent Godfrey and five police officers arrived at the apartment of appellant's mother in Washington, D.C. Upon entering the apartment, Agent Godfrey saw Ford, having emerged from a back bedroom, walking down a short hallway toward the officers. Agent Godfrey instructed appellant that he was under arrest, after which Ford was handcuffed and confined by the other officers. Appellant did not resist the arrest.

Agent Godfrey then walked into the bedroom from which appellant had emerged. The agent turned on the light in the bedroom and noticed a loaded .45 caliber magazine on the floor next to a set of box springs and mattresses. Although Agent Godfrey realized that there were no persons in the room—the room was devoid of furniture except for the box springs and mattresses, a dresser or wardrobe, and several bags piled up in a corner—Godfrey nevertheless proceeded to conduct a search. He lifted one of the mattresses and found live ammunition, money, and crack cocaine. Upon lifting the window shades, he discovered a .45 caliber handgun on the window sill.

Ford was charged, by a retyped indictment,[1] with possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), use of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (1988 & Supp. V 1993), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On September 20, 1993, the District Court held a pre-trial evidentiary hearing on the admissibility of physical evidence seized from the apartment of appellant's mother at the time of Ford's arrest. Agent Godfrey testified that he went into the bedroom "to make sure there was no one there to harm [the arresting officers]." Tr. of Motion Hearing (Sept. 20, 1993) at 30, *reprinted in* Appendix for Appellant (App.) 30. He also testified that there were no chairs or coffee tables behind which someone could hide, and that it would have been "[v]irtually impossible" for someone to hide underneath the mattresses in the bedroom. *Id.* at 33, *reprinted in* App. 33. Agent Godfrey further testified that, shortly after he lifted the mattress and found the ammunition, money, and contraband, an officer who had been stationed outside of the apartment informed him that the officer thought he had seen someone attempt to leave through the window or attempt to put something on the window sill. *Id.* at 18, 40, *reprinted in* App. 18, 40. Agent Godfrey then lifted the window shades and found the gun.

The District Court concluded that Agent Godfrey conducted a legitimate protective sweep and that the evidence discovered was admissible at trial. The court stated:

> Given Mr. Ford's prior record, the fact that the warrant being executed was for felony murder, and the hour at which the warrant was executed, this Court finds that it was reasonable for Agent Godfrey to conduct a protective sweep to make sure that there was no one else on the premises who might have posed a danger to the officers or other individuals in the apartment. Agent Godfrey's actions amounted to no more than a cursory inspection of those places where an individual might have been found.

1. On April 7, 1992, the Government charged appellant with five narcotics and firearm offenses arising from two arrests, and on June 2, 1992, appellant entered a guilty plea on two counts. Appellant twice moved to withdraw his guilty plea, the second time declaring his innocence (contending that he did not possess the gun and drugs found in his brother's bedroom) and both times his motions were denied. On appeal, this court held that the District Court abused its discretion in refusing to grant appellant's second motion to withdraw his guilty plea. *United States v. Ford,* 993 F.2d 249, 251 (D.C.Cir.1993). On June 29, 1993, the District Court vacated appellant's convictions and set aside his sentences. On September 17, 1993, the Government filed a retyped indictment.

*United States v. Ford,* Crim. No. 91–347, slip op. at 7 (D.D.C. Sept. 30, 1993), *reprinted in* App. 87. The court held that the seized .45 caliber ammunition, found in plain view and with an incriminating character immediately apparent, was admissible. *Id.,* slip op. at 8, *reprinted in* App. 88. The court also held that, "[i]n conducting a protective sweep, a reasonably prudent police officer who finds ammunition in plain view next to a bed is justified in checking the immediate vicinity in an attempt to locate weapons that might pose a danger to those present." *Id.*

Ford was subsequently tried by a jury. On February 4, 1994, the District Court granted appellant's motion for judgment of acquittal on the second count—use of a firearm in relation to a drug trafficking offense—and, later that day, the jury returned a guilty verdict against appellant on the remaining two counts. On May 6, 1994, the District Court sentenced appellant to concurrent terms of seventy months imprisonment on both counts, to be followed by concurrent terms of three years of supervised release. Appellant challenges the District Court's determination that Agent Godfrey's search in the bedroom was permissible under the protective-sweep doctrine.[2]

## II. Analysis

■ The Fourth Amendment prohibits only unreasonable searches and seizures. *See Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989). In determining the reasonableness of a search, courts balance the intrusion on an individual's Fourth Amendment interests against the promotion of legitimate Government interests. *See United States v. Villamonte–Marquez,* 462 U.S. 579, 588, 103 S.Ct. 2573, 2579–80, 77 L.Ed.2d 22 (1983). The Supreme Court has repeatedly emphasized the "cardinal principle" that " 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only

to a few specifically established and well-delineated exceptions.' " *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)).

In 1990, following the principles enunciated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court carved out one such exception in *Buie,* permitting law enforcement officers to conduct a "protective sweep" incident to an in-home arrest. *See Buie,* 494 U.S. at 331–34, 110 S.Ct. at 1096–98. In *Buie,* following an armed robbery committed by a man in a red running suit and an accomplice, the police obtained an arrest warrant for Buie at his home and arrested him as he emerged from the basement. *Id.* at 328, 110 S.Ct. at 1095. One of the officers entered the basement "in case there was someone else" there, and seized a red running suit lying in plain view. *Id.* In assessing the propriety of this search, the Court held:

> as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* at 334, 110 S.Ct. at 1098.

The Court thus identified two situations in which protective sweeps are justified, and two types of protective sweeps. The first involves "look[ing] in closets and other spaces immediately adjoining the place of arrest from which an attack could be immedi-

---

**2.** Appellant also challenges the District Court's joinder of the felon-in-possession count with the other counts, as well as the District Court's decision not to suppress the evidence of cocaine, contending that the Government failed to establish the chain of custody of the evidence after it was seized. Because we find the first challenge dispositive, we need not reach the second two.

ately launched." *Id.* The second [3] goes "beyond that," but is nevertheless circumscribed—"such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." [4] *Id.* at 334–35, 110 S.Ct. at 1098–99. The first type of sweep requires no probable cause or reasonable suspicion, while the second requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334, 110 S.Ct. at 1098.

■ This case involves *Buie's* first type of sweep. The law enforcement officers who arrested Ford lacked a reasonable belief based on specific and articulable facts that the area searched harbored a dangerous individual, which would justify *Buie's* second type of sweep. In its brief, the Government argues that the officers had the requisite articulable facts for *Buie's* second type of sweep: because the background check revealed that appellant had prior arrests and that the present arrest warrant was for homicide, the officers could assume that Ford might be armed and dangerous. However, when Godfrey began his sweep, appellant had already been arrested and placed in the custody of the police officers. As we recently stated in another protective sweep case, "the officers' awareness that [appellant] had a previous weapons conviction and could be dangerous did not itself directly justify the sweep. Once [appellant] was in custody, he no longer posed a threat to the police." *United States v. Henry*, 48 F.3d 1282, 1284 (D.C.Cir.1995) (finding articulable suspicion based on informant's warning that appellant would have weapons, that appellant's "boys" or "counterparts" might be with him, and that, when arrested just outside his front door, appellant said "they got me"); *see also United States v. Tisdale*, 921 F.2d 1095, 1097 (10th Cir.1990) ("[T]he danger which justifies a protective sweep comes from the possible presence of *other* armed and dangerous persons in the vicinity."), *cert. denied*, 502 U.S. 986, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991). The Government also argues that the affidavit accompanying the warrant alleged that appellant had accomplices with him when he committed the crime for which he was being arrested, and that this fact would warrant a reasonably prudent officer in believing that the apartment harbored other dangerous individuals. This argument, too, is unpersuasive. The crime for which appellant was arrested occurred almost seven months prior to his arrest,[5] and the officers had absolutely no indication that the alleged accomplices were present in Ford's mother's apartment when the arrest occurred.[6]

---

3. In *Buie*, the Supreme Court focused on this second prong because the defendant in that case was arrested outside the basement and the search was conducted in the basement, which presumably contained spaces which were not immediately adjoining the place of Buie's arrest. Thus, the question for the lower court on remand was whether the searching officer possessed "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 337, 110 S.Ct. at 1099–1100; *see also id.* at 338, 110 S.Ct. at 1100 (Stevens, J., concurring) (noting that record "suggests that no reasonable suspicion of danger justified the entry into the basement" and that "[t]he State may thus face a formidable task on remand"); *id.* at 339, 110 S.Ct. at 1101 (Kennedy, J., concurring) (disagreeing with Justice Stevens' observation that State has formidable task on remand).

4. The Supreme Court also stated that this second kind of sweep "lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 335–36, 110 S.Ct. at 1099.

5. That crime occurred on June 14, 1991. The warrant was executed on January 10, 1992.

6. The Government also argues that appellant's background "combined with the poor lighting conditions in the apartment ... and the fact that the arrest for homicide took place in front of his visibly upset mother and another unknown woman, would warrant a reasonably prudent officer in believing that there could be other dangerous third parties in the apartment." Brief for Appellee at 18. Poor lighting, a visibly upset mother, and another unknown woman, however, have nothing to do with a belief that the area harbors "an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334, 110 S.Ct. at 1098.

Notably, the Government chose not to pursue *Buie's* second prong at oral argument before this court. This made sense, because the record here is clear that Agent Godfrey possessed no articulable facts which would have led him to believe that the area he searched harbored an individual posing a danger to those on the arrest scene.[7]

■ Under *Buie's* first prong, however, as a precautionary matter and without probable cause or reasonable suspicion, Agent Godfrey was free to look in spaces immediately adjoining the place of Ford's arrest from which an attack could be immediately launched. Because the arrest took place in the hallway, and the bedroom from which Ford emerged was immediately adjoining the hallway, Agent Godfrey could legitimately look in the bedroom for potential attackers. Upon seeing, in plain view, the gun clip, an object whose incriminating character is immediately apparent, Agent Godfrey was justified in seizing it. *See Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990) (noting that not only must officer have arrived at place from which evidence could be plainly viewed without violating Fourth Amendment, but incriminating character of evidence must be "immediately apparent"); *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971).

The protective sweep permitted under *Buie's* first prong, however, is very circumscribed, and did not permit Agent Godfrey to search under the mattress or behind the window shades. The *Buie* Court specifically stated that such a sweep consists of a "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." 494 U.S. at 334, 110 S.Ct. at 1098. Agent Godfrey never suggested that a person might have been hiding under the mattress. To the contrary, he testified that it would have been "[v]irtually impossible" for someone to do so. Tr. of Motion Hearing at 33, *reprinted in* App. 33. The District Court noted that "Agent Godfrey testified that he lifted the mattress in search of a gun." *Ford,* Crim. No. 91–347, slip op. at 8, *reprinted in* App. 88. Likewise, Godfrey's testimony regarding the gun found on the window sill gave no indication that someone could have been hiding behind the window shades. On this point, the District Court noted that Godfrey "testified that he went to the window only after having been told by the officers stationed in the back of the apartment that someone had gone to or placed something in the window." *Id.* Accordingly, by searching under the mattress and behind the window shades the agent exceeded the scope of the protective sweep defined by *Buie's* first prong.

■ Even assuming, *arguendo,* that Agent Godfrey had a reasonable belief based on specific and articulable facts that the bedroom harbored an individual posing a danger to those on the arrest scene—*i.e.,* he was justified in conducting a search under *Buie's* second prong—the permissible scope of that sweep still would not have encompassed lifting the mattress or the window shades. *Buie's* second type of sweep extends only to "a cursory inspection of those spaces where a person may be found," 494 U.S. at 335, 110 S.Ct. at 1099, and Godfrey never suspected that he would find a person in either location. Thus, even under this second prong, law enforcement officers are not entitled to conduct a full search of the premises.[8] Rather, they may sweep only those spaces where a person may be found, and their search may last "no longer than is necessary to dispel the reasonable suspicion." *Id.* at 335–36, 110 S.Ct. at 1099. In this case, the law enforcement officer plainly exceeded the permissible scope of a protective sweep.

---

7. Indeed, when asked at the evidentiary hearing why he went into the bedroom, Agent Godfrey testified, "I did not know if there was anybody back there. I wanted to make sure there was no one there to harm us." Tr. of Motion Hearing at 30, *reprinted in* App. 30.

8. As the *Buie* Court stated, "[t]he type of search we authorize today is far removed from [a] 'top-to-bottom' search ... moreover, it is decidedly not 'automati[c],' but may be conducted only when justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." 494 U.S. at 336, 110 S.Ct. at 1099.

■ The Government argues that lifting the mattress and the window shades, if not reasonable conduct during a protective sweep, were justified by exigent circumstances. Citing the Supreme Court's decisions in *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967), and *Mincey*, 437 U.S. at 393–94, 98 S.Ct. at 2413–14, the Government contends that the presence of a gun clip created an exigent circumstance: a threat to the safety of the law enforcement officers. The circumstances underlying the decisions in *Hayden* and *Mincey*, however, differ significantly from the facts in this case. There simply were no exigent circumstances surrounding Ford's arrest justifying a warrantless search.

*Hayden* involved the "hot pursuit of [a] fleeing suspect," *see Mincey*, 437 U.S. at 394, 98 S.Ct. at 2414, and there the Court found that "the exigencies of the situation"—the officers were in pursuit of a suspected armed felon in a house which he had entered only minutes before they arrived—justified their warrantless entry and search, *see Hayden*, 387 U.S. at 297–98, 87 S.Ct. at 1645–46. In *Hayden*, the police spread out through the house in search of the suspect and weapons and seized several items including a shotgun, ammunition, and clothes the suspect allegedly wore. *Id.* The Court noted that "the seizures occurred prior to or immediately contemporaneous with Hayden's arrest, as part of an effort to find a suspected felon, armed, within the house into which he had run only minutes before the police arrived." *Id.* at 299, 87 S.Ct. at 1646. Thus, the Court reasoned that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others," *id.* at 298–99, 87 S.Ct. at 1646, and held that the search and seizures were lawful, *id.* at 300–01, 87 S.Ct. at 1646–47. By contrast, the crime which gave rise

to Ford's arrest warrant occurred *months*, not minutes, before the police arrived at his mother's apartment, and the seizures occurred *after*, not prior to or contemporaneous with Ford's arrest. In short, this case does not involve a "hot pursuit of [a] fleeing suspect," and delaying the course of the officers' investigation in this case clearly would not have endangered their lives or the lives of others.

In *Mincey*, the Supreme Court held that a warrantless search of a homicide scene, in which detectives seized a great deal of incriminating evidence, violated the Fourth Amendment. 437 U.S. at 395, 98 S.Ct. at 2414–15. In that case, after a narcotics raid by several plainclothes police officers which resulted in a shooting, the officers swept the apartment looking for victims and arranging for medical assistance, but did not search for or seize any evidence. 437 U.S. at 387–88, 98 S.Ct. at 2410–11. Homicide detectives arrived within ten minutes and searched the entire apartment without a search warrant. *Id.* at 388–89, 98 S.Ct. at 2411–12. The Court rejected the Government's argument that the search was justified by exigency or emergency, noting that "[a]ll the persons in Mincey's apartment had been located before the investigating homicide officers arrived there and began their search." *Id.* at 393, 98 S.Ct. at 2414. The Court held that "warrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Id.* at 393–94, 98 S.Ct. at 2414. As in *Mincey*, the police in this case had secured all the persons in the apartment of Ford's mother. There simply were no exigent circumstances in this case making the needs of law enforcement so compelling that the warrantless search was objectively reasonable under the Fourth Amendment.[9]

---

9. The Government also points to this court's decision in *United States v. Allison*, 639 F.2d 792 (D.C.Cir.1980), in which this court upheld a warrantless search due to exigent circumstances. In that case, an arrestee told the police that Allison, who had just witnessed the arrest, had a lot of contraband, cash, and a gun in his hotel room,

and that if the police did not "get over there fast" they would miss him because "he will get all of the drugs out of the motel and probably leave town." *Id.* at 793. The court found that "[e]xigent circumstances ... exist where contraband is ... threatened with imminent removal or destruction," and that staking out the premises to

We hold that Agent Godfrey's search under the mattress and behind the window shades violated the Fourth Amendment because a search incident to an in-home arrest, under *Buie's* first prong, permits only a "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." 494 U.S. at 334, 110 S.Ct. at 1098. There were no exigent circumstances in this case justifying a warrantless search beyond what was prescribed in *Buie*. Thus, the evidence seized from these spaces—under the mattress and behind the window shades—was improperly admitted at trial and Ford's conviction must be reversed.

\* \* \*

This is not to say that having seen the gun clip on the bedroom floor, Agent Godfrey could not reasonably have wondered about his safety. We do not mean to require that "police officers take unnecessary risks in the performance of their duties." *Terry*, 392 U.S. at 23, 88 S.Ct. at 1881. In presenting this case, the Government assumes that the law enforcement officers here had only two options: either the police search the house until they find the suspected gun or they back out of the apartment with guns poised, attempting to protect themselves against an individual who might use the hidden gun. This misstates the situation, for the police had reasonable alternatives to these two extremes. First, the police could have telephoned a magistrate for a search warrant. *See* FED.R.CRIM.P. 41(c)(2)(A) ("[A] Federal magistrate judge may issue a warrant based upon sworn testimony communicated by telephone."). The Government contends that "[t]he early morning hour of the arrest would delay obtaining a warrant for several hours." Brief of Appellee at 23 n. 8. Thus, the Government defines "[t]he alternative to Agent Godfrey's limited search" as "plac[ing] a guard at the door of appellant's bedroom and hav[ing] him wait several hours in the apartment of the family of an individual they just arrested for murder while other officers obtained a search warrant." *Id.* But this

mischaracterizes the alternative. Assuming, *arguendo*, that the Government is correct in its assertion that the early morning hour of the arrest would have delayed the obtaining of a warrant for several hours, law enforcement officers had another reasonable alternative. They could have secured the bedroom and telephoned a magistrate for a search warrant, or they could have asked the owner of the apartment, appellant's mother, whether she would consent to a search of the apartment in lieu of waiting for a magistrate to issue a search warrant. This reasonable alternative to a warrantless search would have avoided the infringement of Fourth Amendment rights, without in any way jeopardizing the safety of the officers.

### III. CONCLUSION

In this case, the law enforcement officer's search under the mattress and behind the window shades went beyond the narrowly confined protective sweep articulated in *Buie*. As such, the officer's actions violated the Fourth Amendment's prohibition against unreasonable searches. Because the District Court erred in admitting evidence seized during an unconstitutional search of appellant's mother's apartment, we reverse the judgment of conviction and remand the case to the District Court for further proceedings consistent with this opinion.

*So ordered.*

obtain a warrant "would have risked loss of the evidence and could have endangered the policemen's safety." *Id.* at 794 (internal quotations omitted). Exigency due to the imminent destruc-

tion of evidence in this case was not an issue since the police officers presumably had watch over the occupants.