791 So.2d 749 (2001)
STATE of Louisiana
v.
Fredrick MANSON.
No. 01-KA-159.
Court of Appeal of Louisiana, Fifth Circuit.
June 27, 2001.
*753 Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Counsel for Fredrick Manson, Defendant-Appellant.
Paul D. Connick, Jr., District Attorney, 24th Judicial District, Rebecca J. Becker, Terry Boudreaux, Appellate Counsel, Thomas S. Block, Trial Counsel, Assistant District Attorneys, Gretna, Counsel for the State of Louisiana, Plaintiff-Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
Fredrick Manson appeals his conviction of possession of cocaine with intent to distribute *754 and his subsequent conviction as a third-felony habitual offender.[1] We affirm, but remand for correction of a patent error.
On February 25, 1999, the Jefferson Parish District Attorney filed a bill of information charging Fredrick Manson and Albert Johnson with violation of La.R.S. 40:967(A), possession with intent to distribute cocaine. Manson entered a plea of not guilty on March 3, 1999. On July 27, 1999, Manson's case was severed from his codefendant's.
Manson filed a motion to suppress the evidence, which was heard on two separate days and was denied. On March 29 and 30, 2000 he was tried by a twelve-member jury, which returned a verdict of guilty as charged.
On April 6, 2000, the trial court took up defendant's motion for new trial,[2] in which defendant argued the evidence was insufficient to sustain a conviction. The court denied defendant's motion. Defendant waived sentencing delays and the trial court sentenced him to ten years at hard labor, with the first five years to be served without benefit of parole, probation or suspension of sentence. Defendant made an oral motion for appeal. On the same day, the State filed a habitual offender bill of information, alleging that defendant is a third-felony offender.
After a habitual offender hearing on June 9, 2000 the trial court found defendant to be a third-felony offender. On June 12, 2000, the court vacated defendant's original sentence and imposed the mandatory sentence under La. 15:529.1 of life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Defendant appeals.

FACTS
On the afternoon of January 13, 1999, narcotics detectives Jenell Godfrey and William Sandino of the Kenner Police Department conducted a surveillance on a Kart-N-Carry convenience store at 324 Third Street. The officers knew the store to be the site of a great deal of drug activity and they had made several arrests in that area. Additionally, the police department had received numerous complaints about drug activity in the area of the store. The officers wore plain clothes and sat in an unmarked Chevrolet Camaro parked across the two-lane highway in front of the store.
At about 2:00 p.m., the officers saw a green Pontiac Grand Am automobile in a parking lot next to the store. Defendant, Fredrick Manson, was in the driver's seat; Albert Johnson was in the passenger seat. Over a thirty-minute period, the officers watched four to five individuals approach the car and engage in quick hand-to-hand transactions with the car's occupants. Manson and Johnson neither went inside the store nor left the car at all. Given their knowledge of the area and their experience in handling narcotics investigations, the detectives believed the subjects were engaged in the sale of drugs.
*755 After the final transaction, the car's rear lights went on, indicating the car was running. Detective Sandino drove the police vehicle across the highway and positioned it behind the Grand Am. The suspects' car started to move slowly and the suspects began acting in a nervous manner. Johnson turned around several times and looked at the officers. Defendant leaned forward as if he was stowing something under his seat. Concerned that defendant might be attempting to conceal a weapon or contraband, the officers effected an investigatory stop.
When defendant stopped his car, Detective Sandino instructed both men to get out. At the same time, Sandino walked to the driver's side of the Grand Am. Sandino saw seven off-white, rock-like objects scattered on the driver's side floorboard. Sandino seized the rocks (State's Exhibit 1), and conducted a chemical field test on them. The result was positive for cocaine. The detectives placed defendant and Johnson under arrest.
Thomas Angelica, Jr. of the Jefferson Parish Crime Lab, an expert in the analysis of controlled dangerous substances, testified that he tested the evidence in this case. The result was positive for cocaine.

ASSIGNMENT OF ERROR NUMBER ONE

The Court erred by failing to suppress evidence obtained from an illegal search.
By this assignment, defendant argues that the cocaine evidence seized at the time of his arrest should have been suppressed. He asserts that the evidence was tainted because it was seized pursuant to an unlawful arrest. He further argues that there was no connection between himself and the seized cocaine, as Albert Johnson admitted the drugs belonged to him.
On trial of a motion to suppress, the State has the burden of showing the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D). The question of whether a particular search or seizure was lawful is for the trier of fact. A trial judge's determination of admissability is given great weight and will not be disturbed unless a preponderance of the evidence clearly so mandates. State v. Stewart, 387 So.2d 1103, 1107 (La.1980). In reviewing the trial court's ruling on defendant's motion to suppress, the appellate court looks to the totality of the evidence presented at the motion to suppress hearing and the trial. State v. Burkhalter, 428 So.2d 449, 455 (La.1983).
The first step to considering defendant's claim is to determine whether detectives Godfrey and Sandino were legally justified in stopping defendant and his companion. The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is recognized by La.C.Cr.P. art. 215.1 and by state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
Reasonable suspicion to stop is something less than the probable cause required for an arrest. The reviewing court must look to the circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights, giving deference to *756 the inferences and deductions of a trained officer. State v. Huntley, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049. An officer's experience, his or her knowledge of recent criminal patterns and his or her knowledge of an area's frequent incidence of crime are factors that may support reasonable suspicion for an investigatory stop. State v. Davis, 00-278, p. 16 (La.App. 5 Cir.8/9/00), 768 So.2d 201, 212.
In the instant case detectives Godfrey and Sandino, the officers who made the stop, both had several years' experience as narcotics agents. The detectives testified that the store where they conducted the surveillance was in a high crime area which had long been associated with the drug trade. The officers had in fact made numerous arrests there. In addition, there had been many citizen complaints about drug activity in that area.
The reputation of a neighborhood as a high-crime area is an articulable fact upon which an officer may legitimately rely in making a determination as to reasonable suspicion for an investigatory stop. State v. Flagg, 99-1004, p. 8 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 527, writ denied, 00-1510 (La.3/9/01), 786 So.2d 117.
At the motion hearing, the officers testified that they spent about 30 minutes conducting a surveillance of the Kart-N-Carry store, watching for suspicious activity. During that time, they saw defendant and Johnson sitting in a green Grand Am, parked in the store's parking lot. They recognized defendant, as they had investigated him, and even arrested him for narcotics activity in the past. Detective Sandino recognized the Grand Am as a car he had seen defendant drive while the officer had him under surveillance in an unrelated investigation. Neither defendant nor Johnson left the car during the time the officers watched them.
The officers watched from across the street as four to five people approached the occupants of the car at various intervals, engaging in hand-to-hand transactions with either defendant or Johnson through the open windows. These individuals came and went quickly and furtively. The officers testified that the behavior they observed is typical of people buying drugs. While the neighborhood defendant was in has a predominantly black population, most of the individuals who approached the car were white. Detective Godfrey testified that, in her experience, this scenario signified drug activity. Godfrey stated that she did not see drugs change hands, but that she did see currency exchanged.[3]
The officers observed the two men until defendant, the driver of the car, began to pull out of the parking lot. The officers then pulled their car behind the Grand Am. Both defendant and Johnson began to act in a nervous manner. Johnson repeatedly turned to look at the officers' unmarked car as if he recognized it. The officers saw defendant and Johnson lean forward in their seats and move around as if they were hiding something. Godfrey and Sandino testified that a decision was made to perform an investigatory stop at that point because they believed it likely the men were attempting to hide weapons or contraband. The officers stopped the subjects at that point.
Applying the jurisprudence to the foregoing facts, we conclude that Godfrey and Sandino made a valid investigatory stop *757 based on reasonable suspicion of criminal activity.
Next we must determine whether, once the stop was accomplished, the officers lawfully seized the cocaine. Once the Grand Am came to a stop, both officers exited their vehicle. Sandino walked toward the driver's side of the car, as defendant was leaving the driver's seat. From his position next to the car, Sandino saw seven small off-white rocks scattered on the driver's side floorboard. He believed, based on his experience as a narcotics officer, that the rocks consisted of crack cocaine.
Sandino handcuffed defendant, then retrieved the rocks from the car. Godfrey detained Johnson. Sandino performed a field test on the evidence, and the result was positive for cocaine. Defendant and Johnson then were formally arrested. Godfrey searched Johnson pursuant to arrest and found only ten cents on his person. Sandino searched defendant and found $330.00 in currency.[4]
Defendant argues that the cocaine evidence is tainted because it was seized pursuant to an arrest that was not based on probable cause. Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. La. C.Cr.P. art. 162. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). One such exception is where the item seized is found in plain view. Under the "plain view" doctrine, police officers may seize evidence without a warrant if they are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if they have a lawful right of access to the object. See, Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).
As discussed above, the officers' investigatory stop was valid, and Sandino was entitled to approach defendant in order to question him and to determine whether he had a weapon. The detective was therefore lawfully in the position from which he viewed the rocks on the car's floorboard. Sandino, an experienced narcotics officer, immediately deduced that the rocks were crack cocaine. What was first a reasonable suspicion of criminal activity ripened into probable cause. It was a valid search under the "plain view" exception to the exclusionary rule.
Based on the foregoing, we find no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER TWO

The Trial Court erred by not allowing any evidence showing that the codefendant, Albert Johnson, was the owner of the cocaine.
By this assignment, defendant claims Albert Johnson made statements that he alone was responsible for the cocaine seized from the car and that the judge erred in refusing to allow the admission of hearsay testimony regarding those statements at trial. Defendant argues that said testimony was admissible under the hearsay exception for statements against interest.
Article 804 of the Louisiana Code of Evidence provides certain exceptions, where the declarant is unavailable, to the general rule against the admissibility of *758 hearsay statements. The article provides, in pertinent part:
A. Definition of unavailability. Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court.
* * *
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
* * *
(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
In State v. Hammons, 597 So.2d 990, 996-997 (La.1992), the Louisiana Supreme Court extensively discussed the application of the hearsay exception for statements against interest:
Admission of statements against interest, as a traditional exception to the hearsay rule, is based on necessity and trustworthiness. The unavailability of the declarant requirement generally establishes the need to admit his out-of-court statement. The "against interest" requirement assures some degree of trustworthiness, because a person ordinarily does not make a statement that is disadvantageous to himself without substantial reason to believe that the statement is true.....
Fed.R.Evid. 804(b)(3) requires for admissibility of a statement against interest the objective determination that "a reasonable man in his position would not have made the statement unless he believed it to be true." This standard is especially appropriate to the admission of having committed a crime....
When the statement is one against the declarant's penal interest, the circumstances surrounding the making of the statement may be significant in determining its trustworthiness. If a declarant admits sole responsibility for a serious crime, the statement is generally prima facie against interest so as to satisfy this requirement of the rule.... However, if the statement is clearly self-serving, as when the declarant is seeking favorable treatment for himself in return for cooperation, the statement may be deemed not against his interest and thus may fall outside the exception.... Likewise, when the declarant unknowingly speaks to informants or undercover agents, the statement is usually admissible under the exception....
When the statement tending to expose the declarant to criminal liability is offered to exculpate the accused, La.Code. Evid. art. 804 B(3) expressly requires corroborating circumstances indicating trustworthiness. The burden of satisfying the corroboration requirement is on the accused.... That burden may be satisfied by evidence independent of the statement which tends, either directly or circumstantially, to establish a matter asserted by the statement.... Circumstantial evidence of the veracity of the declarant as to the portion of the statement exonerating the accused is generally *759 sufficient. Typical corroborating circumstances include statements against the declarant's interest to an unusual or devastating degree, or the declarant's repeating of consistent statements, or the fact that the declarant was not likely motivated to falsify for the benefit of the accused.
Defendant made his request in the form of a motion at the beginning of trial. Defense counsel asserted that Johnson made statements to others, including an assistant district attorney, "that the seven (7) rocks of cocaine was his, that Fredrick Manson had no knowledge of that crack cocaine, he didn't see any crack cocaine, he didn't have any crack cocaine, and, as a matter of fact, Albert Johnson sold it to someone else outside of the car...."
In a hearing held outside the jury's presence, defendant called assistant district attorney Kia Habisreitinger as a witness. She testified that she knew by referring to the case file that she had screened defendant's case, but that she had no independent recollection of the matter. She did not recall whether Albert Johnson had met with her and given her a statement in regards to this case. Habisreitinger testified that her usual advice to a criminal defendant who wishes to discuss evidence having to do with pending charges is to obtain an attorney, and to have that attorney speak to her. She would not have discussed with a suspect the facts of his pending case. Had one of the defendants in the instant case attempted to claim responsibility for the contraband in order to exculpate his co-defendant, she would have advised him to obtain an attorney, who would in turn have spoken to Habisreitinger. That attorney would have been asked to submit an affidavit, which she would have made part of the file.
Habisreitinger testified that upon reviewing her screening file in the instant case, she found she had made no notes to the effect that anyone had come to discuss the case with her. However, had one of the defendants attempted to speak with her himself, she would not have made notation of it, since she would have refused to speak with him.
In argument to the court, defense counsel David Capasso stated that Albert Johnson had approached him with information that would help defendant's case. Capasso referred Johnson to the district attorney's office. Counsel stated that he had a witness to corroborate defendant's claim that Johnson in fact went to the district attorney's office and informed Habisreitinger that the seized cocaine was his alone. Specifically, Capasso stated that defendant's brother, Elvin Manson, was present when Johnson made these alleged statements to Habisreitinger. The trial court denied defendant's motion to admit the evidence of Johnson's statement because the trustworthiness of the statement had not been proven.
It is first noted that the defense did not show that Albert Johnson was an "unavailable" witness based on any of the circumstances listed under La.C.E. art. 804A. Defense counsel stated that he had received a telephone call from Johnson, who wanted to know what he could do to help defendant. Although counsel repeatedly stated that Johnson was willing to take full responsibility for the cocaine seized from the car, the record contains no discussion or testimony regarding why Johnson himself could not or would not testify on defendant's behalf at trial.
If Johnson admitted sole responsibility for distribution of cocaine, a serious offense, it can be said that his statement is prima facie against interest. However, defendant offered little evidence of corroborating *760 circumstances to support the trustworthiness of the alleged statements. Habisreitinger's testimony provided no support for defendant's assertion. On the contrary, her testimony tended to disprove the trustworthiness of the statement.
Defendant complains that the trial court deprived him of his constitutional right to present a defense by refusing to hear further evidence regarding Johnson's statements. However, by the time the court made the ruling complained of, it had already heard extensive testimony regarding whether or not Johnson made the statement at issue. Michelle Manson, defendant's wife, testified at the hearing on the motion to suppress evidence that she was at the scene at the time defendant and Johnson were arrested. She stated that Johnson repeatedly said, "It was my charge. Y'all can let that man go." According to Mrs. Manson, the police officers at the scene told Johnson to "shut up." The trial court apparently did not place much credence in Mrs. Manson's testimony. Moreover, defendant's claims were rebutted by the motion hearing testimony of detectives Godfrey and Sandino. Both officers stated that Johnson made no statements at the time of his arrest.
Based on the foregoing, we conclude that defendant failed to satisfy the corroboration requirement under La.C.E. 804B(3). Accordingly, there is no merit to this assignment.

ASSIGNMENT OF ERROR NUMBER THREE

The defendant's motion for new trial should have been granted.
Defendant here complains that the trial court erred in failing to grant his new trial motion, which was based on a claim that the evidence at trial was insufficient to sustain a conviction.
La.C.Cr.P. art. 853 requires that a motion for new trial be filed and disposed of prior to sentencing. Article 852 provides that a motion for new trial shall be in writing, and shall state the grounds upon which it is based.
On April 6, 2000, prior to sentencing, the trial court took up a defense motion for new trial. The transcript reflects that defense counsel gave the judge a copy of said motion and the judge stated, "The Court has been furnished with a copy of a motion for new trial." Defendant alleged in his motion that the verdict was contrary to the law and evidence, one of the grounds for new trial listed in La.C.Cr.P. art. 851. The trial judge denied the motion that day, then imposed sentence.
Although the transcript reflects that a timely written motion for new trial was filed, the only written motion found in the record was filed on April 27, 2000, well after sentence was imposed. Considering that this written motion was filed by the attorney who represented defendant at sentencing and that it set out the same claim presented to the trial court that day, it is possible it is the one mentioned in the transcript.
Even if defendant failed to preserve his appeal rights by way of a properly filed motion for new trial below, he is entitled to a review for sufficiency. The courts have long recognized a defendant's right to appellate review for sufficiency of the evidence, even in the absence of a written motion for new trial or for post verdict judgment of acquittal. State v. Washington, 421 So.2d 887, 889 (La.1982).
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of *761 fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438.
A different test is applied on appellate review. The Louisiana Supreme Court recently commented:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." ... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83.
Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 99-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
The crime of possession with intent to distribute cocaine requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. State v. Snavely, 99-1223, p. 11 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 958, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840. Guilty knowledge is an essential element to the crime of possession of contraband, and such knowledge may be inferred from the circumstances. Williams, 98-1006 at p. 6, 735 So.2d at 69. Possession includes both "actual" and "constructive" possession. State v. Sandifer, 95-2226, p. 10 (La.9/5/96), 679 So.2d 1324, 1331. A person who was not in physical possession of narcotics may have constructive possession when the drugs are under his dominion and control. State v. Quest, 00-205, p. 21 (La.App. 5 Cir. 10/19/00), 772 So.2d 772, 786.
The key factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relations with the person found to be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of drug paraphernalia, and evidence that the area was frequented by drug users. Williams, 98-1006 at p. 6, 735 So.2d at 69.
There was ample evidence that defendant had at least constructive possession of the drugs. Detectives Godfrey and Sandino testified that defendant was driving the car in which the cocaine was found. Loretta Manson, defendant's sister, testified that the car occupied by defendant and Johnson belongs to her, and that she allowed her brother to use it on January 13, 1999. When Detective Sandino spotted the rocks of crack cocaine, they were all located on the floorboard on the driver's side of the car. Defendant had not even *762 completely exited the driver's seat when the officer saw the rocks. Considering that the car was in defendant's custody and the drugs were found in plain view on defendant' side of the car, it is unlikely he did not know there was cocaine in the car. Defendant argues that it was Johnson who possessed the cocaine, and that he knew nothing about it. However, considering the evidence in a light most favorable to the State, defendant's suggested scenario is not sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. It is difficult to fathom how defendant could have been completely unaware of the presence of cocaine in that car.
The intent to distribute cocaine, for purposes of proving the charge of possession of cocaine with intent to distribute, may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. State v. White, 98-91, p. 5 (La.App. 5 Cir. 6/30/98), 715 So.2d 714, 717, writ denied, 98-2043 (La.11/25/98), 729 So.2d 577. The detectives testified that they performed a surveillance of defendant and Johnson for 30 minutes. They were parked directly across the street from defendant's car. They did not see defendant or Johnson go into the convenience store, although they were parked in the store's parking lot.
The officers saw four to five people approach defendant's car and engage in hand-to-hand transactions with either defendant or Johnson. Although the detectives did not see narcotics change hands, Detective Godfrey testified that she saw some of the people give money to defendant. Godfrey further observed that rocks of crack cocaine are very small, and not easily visible.
Godfrey, an experienced narcotics agent, testified that quick hand-to-hand transactions such as those she witnessed are, in that neighborhood, synonymous with drug dealing. Sandino testified that, based on his police experience, the quick, surreptitious actions of the "buyers" was typical of people purchasing drugs. This behavior shows the drug purchasers' fear of being caught by police. Godfrey testified that defendant leaned forward in his seat once he spotted the officers. This lead her to believe he was attempting to conceal a weapon or contraband.
The behavior of defendant and the subjects who approached the car, along with the officers' discovery of seven rocks of crack cocaine in the car and more than $300.00 on defendant's person, is sufficient evidence to prove defendant's intent to distribute.
Viewing the evidence in the light most favorable to the State, we find the evidence was sufficient to prove the elements of the charged offense beyond a reasonable doubt.

ASSIGNMENT OF ERROR NUMBER FOUR

The Court erred by accepting inadequate proof before sentencing Mr. Manson to life in prison as a third felony offender.
Defendant here complains that the State failed to provide sufficient proof to support the court's finding that he is a third felony offender.
To prove that a defendant is a habitual offender, the State, among other things, must establish by competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Breaux, 00-236, p. 7 (La. App. 5 Cir. 8/29/00), 767 So.2d 904, 909. *763 The State may establish this by various means, such as the testimony of witnesses to prior offenses, expert testimony matching fingerprints of the accused with those in the record of prior proceedings, or photographs contained in a duly authenticated record. State v. Hollins, 99-278, pp. 20-21 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 684-685, writ denied, 99-2853 (La.1/5/01), 778 So.2d 587.
The two prior felony convictions the State alleged in the habitual offender bill were a 1991 conviction for distribution of cocaine (case number 91-910) and a 1989 conviction for possession of cocaine (case number 89-750). On May 1, 2000, defendant filed a Notice of Objections to the Multiple Bill. At trial of the multiple bill on June 9, 2000, Captain Merril Boling testified that he took defendant's fingerprints in court on the morning of the hearing (State's Exhibit 1). Boling further testified that he examined the arrest register corresponding to the bill of information in case number 91-910 (State's Exhibit 2). He stated that those fingerprints matched those on State's Exhibit 1. The arrest register in State's Exhibit 2 was linked to the bill of information in that exhibit by means of the police item number, the offense charged, the date of the offense, and defendant's name and date of birth. A guilty plea form containing case number 91-910, bearing defendant's signature, was attached to the arrest register.
Captain Boling further testified that the fingerprints on State's Exhibit 1 matched those on the arrest register in case number 89-750 (State's Exhibit 3). The arrest register was linked to the bill of information in that case by means of the police item number, defendant's name, the date of the offense, and the offense charged. State's Exhibit 3 also contained a guilty plea form completed by defendant and a district court commitment indicating defendant had pleaded guilty to possession of cocaine.
Defendant argues that fingerprint evidence taken from the arrest registers (as opposed to the bills of information) was insufficient to tie him to the prior convictions. However, this Court has held that testimony comparing a defendant's current fingerprints with those found on prior arrest records is sufficient to prove the defendant was the person convicted of the prior felony, where the arrest register is linked to the record of the predicate felony by similarity of name, date of commission, the type of offense and the item number. State v. Lee, 97-1035, p. 4 (La.App. 5 Cir. 2/11/98), 709 So.2d 226, 229. See also, State v. Duplessis, 00-971, p. 6 (La.App. 5 Cir. 12/14/00), 777 So.2d 529, 532.
The evidence in this case was sufficient to prove that there were prior felony convictions, and that defendant was the same person who was convicted of the prior offenses.
Defendant also complains that his prior guilty pleas were not knowingly and voluntarily made. Specifically, he asserts that he was not informed of his sentencing exposure at the time of his guilty pleas, nor was he told that a felony conviction could be used to enhance a future felony sentence.
Although La.C.Cr.P. art. 556.1 requires the trial court to advise the defendant of his sentencing exposure prior to accepting a guilty plea, the article was not in effect when defendant entered the predicate guilty pleas. In State v. Anderson, 98-2977 (La.3/19/99), 732 So.2d 517, the court found, "Advice with respect to the defendant's sentencing exposure may facilitate the taking of a voluntary guilty plea..., but it has never formed part of [the Louisiana Supreme Court's] core Boykin [v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, *764 23 L.Ed.2d 274 (1969)] requirements for the entry of a presumptively valid guilty plea in any case." (Emphasis in the original).
Further, the Louisiana Supreme Court has not required that a defendant be informed that a guilty plea may be used as a basis for the filing of a future habitual offender bill, or that this point forms a part of the Boykin rights. State v. Frickey, 00-294, p. 13 (La.App. 5 Cir. 9/26/00), 769 So.2d 791, 799; State v. Pickett, 99-532, p. 8 (La.App. 5 Cir. 10/26/99), 746 So.2d 185, 189. Thus, defendant's arguments on these points are unfounded.
Defendant further contends that the guilty plea forms the State offered in evidence were not sufficient to show that he was properly apprised of his rights prior to entering the prior guilty pleas. Defendant testified at the habitual offender hearing that he was unable to read when he entered the predicate guilty pleas, that he did not know what "multiple bill" meant, and that he signed the guilty plea forms at the urging of his attorney, without understanding what it was he was signing.
Where a prior conviction alleged in a habitual offender bill resulted from a guilty plea, the State must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to the guilty plea. State v. Shelton, 621 So.2d 769, 773 (La.1993).
If the defendant denies the habitual offender allegations, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when the plea was taken. State v. Shelton, supra.
Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a "perfect" transcript of the Boykin colloquy between the defendant and the judge or any combination of a guilty plea form, a minute entry, or an "imperfect" transcript." Shelton, 621 So.2d at 780. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proving that the defendant's prior guilty plea was informed and voluntary. Shelton, supra.
The State met its initial burden by proving the existence of the predicate guilty pleas, and that defendant was represented by counsel when the pleas were entered. The evidence produced by the State included bills of information, guilty plea forms and minute entries. The guilty plea forms both include an explanation of defendant's Boykin rights. Defendant signed the forms, thereby acknowledging that he understood those rights. Defendant testified that, although he signed the waiver of rights forms, his attorney did not explain his constitutional rights to him.
On cross-examination, the prosecutor questioned defendant about a prior conviction (State's Exhibit 4) not included in the habitual offender bill. Although defendant could recall the proceedings surrounding the two predicate guilty pleas in the habitual offender bill, he testified that he could not remember having pleaded guilty to that offense.
Defendant did not produce affirmative evidence of procedural irregularity or violation of his rights in the taking of the predicate guilty pleas, and thus did not *765 meet his burden under Shelton.[5] Therefore, the burden did not shift back to the State to provide "perfect" transcripts or Boykin colloquies. Based on the foregoing, we find the evidence was sufficient to support the trial court's finding that defendant was a third felony offender. We find no merit to this assignment.
Review of the record reveals one patent error. Specifically, the commitments corresponding to defendant's original sentence and his habitual offender sentence state that the court informed him of the two-year statutory delay for filing applications for post conviction relief. However, the transcripts of those sentencing proceedings do not reflect that defendant was so advised.
It is well settled that where a transcript and a minute entry conflict, it is the transcript that prevails. State v. Lynch, 441 So.2d 732 (La.1983); State v. Wilkinson, 00-339, p. 25 (La.App. 5 Cir. 10/19/00), 772 So.2d 758, 771. It should therefore be assumed that defendant was not properly advised of the prescriptive period provided in La.C.Cr.P. art. 930.8. Accordingly, we shall remand the matter with instruction to the trial court to send written notice to defendant of the two-year time limitation, and to file written proof of such notice in the trial court record. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
For the foregoing reasons, the convictions are affirmed. The matter is remanded and the trial court is ordered to send written notice to the defendant of the time limitation to file for post-conviction relief, as set out in La.C.Cr.P. art. 930.8 and to file written proof of such notice in the record.
AFFIRMED AND REMANDED.
NOTES
[1] Although the caption of the appellate record displays the defendant's first name as "Frederick," according to the original bill of information and other documents in the record his first name is actually "Fredrick" (no second "e").
[2] Although the transcript shows that defense counsel provided the judge with a copy of the motion in open court, said motion is not found in the record. The only written motion for new trial in the record is one filed on April 27, 2000, after defendant's sentencing. It is possible that the written motion contained in the record is the one filed in court prior to sentencing, considering that it was filed by the attorney who filed the new trial motion in open court and that it raises the same issues raised by that attorney in open court.
[3] In Flagg, 760 So.2d 522, this Court found that an experienced officer's observation of an apparent hand-to-hand transaction that occurred in a high crime area which was the subject of ongoing complaints was sufficient to give rise to reasonable suspicion of criminal activity to support an investigatory stop.
[4] Detective Sandino testified that the money was not taken as evidence, as it was his supervisor's policy not to seize money in amounts under $500.00.
[5] See State v. Neal, 00-41, p. 7 (La.App. 5 Cir. 5/30/00), 762 So.2d 281, 285, in which this Court found that the defendant had not made the necessary showing under Shelton when he asserted at the habitual offender hearing that he was not advised of his constitutional rights at the prior guilty pleas, but did not present affirmative evidence in support of his contention.