833 So.2d 411 (2002)
STATE of Louisiana
v.
Richard MILTON.
No. 02-KA-272.
Court of Appeal of Louisiana, Fifth Circuit.
November 13, 2002.
*413 Paul D. Connick, Jr., District Atorney, Terry M. Boudreaux, Alison Wallis, Assistant District Attorneys, Parish of Jefferson, State of Louisiana, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, Gretna, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and SUSAN M. CHEHARDY.
SOL GOTHARD, Judge.
Defendant, Richard Milton, was convicted of possession of a firearm while in possession of marijuana, in violation of LSA-R.S.14:95E and of possession with the intent to distribute cocaine in violation of LSA-R.S.40:967A. Defendant was sentenced to imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for a period of seven and one-half years and a fine of $10,000.00 as to count one; and to imprisonment at hard labor for a period of fifteen years as to count two, with the sentences being ordered to run concurrently. Thereafter, the State filed a multiple bill. After the defendant admitted his status as a second felony offender, the defendant was resentenced to 22½ years of imprisonment at hard labor without benefit of probation or suspension of sentence for his conviction under count two of the original bill of information, to be served concurrent to the sentence imposed on count one. The trial court also recommended Blue Walters Drug Treatment for the defendant. The defendant now appeals his convictions and sentences.

FACTS
The following facts were developed at trial. On January 1, 2000, at approximately 1:30 a.m., four members of the Jefferson Parish Sheriff's Office Street Crimes Division were on routine patrol in the Tallowtree neighborhood on the Westbank of Jefferson Parish. The neighborhood is known as a "high crime" area because of numerous violent crimes and drug transactions. Deputies Kevin Decker and John Heck were in one unmarked unit, while Deputies David Roddy and Brett Beavers were in a second unmarked unit. The officers were dressed in the uniforms worn by the Street Crimes Unit, which consisted of a dark shirt with the word "Sheriff" on the back and a reflective police patch on the sleeve. Each patrol unit traveled down one of the main streets leading into the neighborhood and the units ran parallel to each other.
As Officers Kevin Decker and his partner approached a group of apartment complexes in the 1000 block of Tallowtree, two black male subjects were observed "in the shadows," walking north between the buildings and the parking lot. According to Officer Decker, the men "appeared to be interacting strangely" as they stopped to talk. Officer Decker testified that, although his police vehicle was unmarked, it was known in this neighborhood. Officer Decker stated that when the men recognized the unmarked police unit in which Decker was riding, the two men attempted to hide behind a U-haul truck. It was at this point the officers decided to stop and investigate. Officers Decker and Heck exited the vehicle, and, as they did, the two subjects began to run in opposite directions. Officer Decker gave chase after *414 one of the suspects, who was later identified as Richard Milton. According to Officer Decker, as Milton fled, he reached into the waistband of his pants, as if he was attempting to grab a weapon. Officer Decker chased Milton down an alley to the back of the apartment complex. At the rear of the complex was a fence that bordered the property and behind the fence was a canal. Officer Decker followed Milton, while holding his police-issued flashlight in his hand. It was dark and there was fog in the area. Officer Heck also held a flashlight as he followed behind Officer Decker and the suspect. Neither officer had his weapon drawn. When Milton reached the fence surrounding the canal, he went over the fence. Milton fell to the ground and a gun fell from his right front pocket. Out of his left hand, defendant dropped a piece of white paper and a plastic bag containing individual plastic bags containing a white powder substance. Officer Decker was about fifteen (15) feet behind Milton at this time.
Thereafter, Officer Decker broadcast a description of Milton as being a black male, wearing a gray sweatshirt and tan shorts, with a white cap. The officer also broadcast the direction that the suspect was seen running. Shortly before the broadcast, Officer Heck ran in the opposite direction because he felt Milton could have escaped through one of the holes in the fence. However, Milton did not run past Officer Heck.
In response to Officer Decker's broadcast, Officers David Roddy and Brett Beavers, who were patrolling nearby, drove to the area. The pair exited their police unit and headed to the canal, that was about fifty (50) feet away from where they parked. Officer Roddy was on the fence line and Officer Beavers was on the outside of the fence. As Officer Roddy ran around the fence he spotted a black male who matched the description broadcasted by Officer Decker. The subject had slowed to a jog and was out of breath, as if he had been running. According to Officer Roddy, because the apprehending officers were aware of the prior report of a gun being connected with this suspect, they detained the suspect in a prone position on the ground with his hands in cuffs. An outer search of the suspect's clothing for weapons was conducted, but none was found. Officer Roddy radioed Officers Decker and Heck to advise them of the apprehension.
Although Officer Decker did not see the defendant's face prior to his apprehension, the officer would later testify that this subject met the description of the person he chased to the canal and he was apprehended in the same general direction. Additionally, there was no one else on the canal that night and when this subject was apprehended, he was sweating and out of breath.
The suspect was placed under arrest, advised of his rights, and a search incident to arrest was conducted. The search revealed rolling papers found on the defendant and three $20 bills.
The second suspect was not apprehended.
The evidence at the scene was collected. What appeared to be controlled substances was first field tested and then sent to the Crime Lab. The green vegetable matter in the paper dropped by defendant tested positive for marijuana and the white powder substance in the eighteen (18) individual plastic bags tested positive for cocaine. An expert would later testify at trial that this manner of packaging was consistent with drug distribution.
On July 24, 2000, shortly before the trial of this case, the assistant district attorney assigned to the case, Joan Benge, contacted *415 Officer Decker to request that he accompany her to the crime scene. The pair walked through the apartment complex courtyard at approximately 8:15 p.m. and Officer Decker was attempting to remember what portion of the fence the defendant had previously scaled. The pair looked at two segments of the fence line. Thereafter, they stopped on the driveway and were approached by the defendant. The defendant walked up, shook the officer's hand and the assistant district attorney, who was surprised to see the defendant, and said hello. Defendant asked the pair what they were doing and the detective said he was looking to see what portion of the fence defendant had jumped before his apprehension. The officer said, "I think the cut's right there that you ran through," and he indicated accordingly. The defendant stated, "That's the one I jumped over right there." Thereafter, Ms. Benge advised the defendant that his attorney would not be happy with him talking to them and she told him to go back inside. The defendant wished the pair "Good Luck" and he left.

ANALYSIS
In his first allegation of error, defendant alleges that the trial court erred in failing to suppress the evidence. Defendant contends that reasonable suspicion did not exist for the stop of the defendant; thus, the subsequent arrest and seizure of the physical evidence was illegal and should have been suppressed. The State responds that the evidence was admissible since it was not the product of an illegal seizure. The State reasons that the officers approached the defendant to interview him. In response, defendant fled and abandoned the evidence that was subsequently seized and provided the basis of probable cause for his arrest.
The Fourth Amendment of the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Manson, 01-159, p. 4 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 755. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. Id. at 757 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).
When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving that the search and seizure was justified pursuant to one of the exceptions to the warrant requirement. State v. Jones, 99-972, p. 6 (La.App. 5 Cir. 2/29/00), 757 So.2d 110, 112, writ denied, 00-1186 (La.9/21/01), 797 So.2d 58, 2001 La. LEXIS 2716.
In reviewing the ruling on the motion to suppress, the appellate court will look to the totality of the evidence as presented at the hearing of the motion and the trial. State v. Wilson, 00-0178, p. 3 (La.12/8/00), 775 So.2d 1051, 1053; State v. Manson, 791 So.2d at 755. The trial judge's determination on the motion to suppress will not be disturbed on appeal, unless it is clearly wrong. State v. Casey, 99-0023, p. 2 (La.1/26/00), 775 So.2d 1022, 1029, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
On appeal, defendant alleges that the only facts available at the time the policemen decided to stop the defendant was that he was a young man in a high crime area. He reasons that these facts did not provide "reasonable suspicion" for his stop. Additionally, defendant contends the decision to stop was made when the two men were seen walking down the street, before any attempt to hide or run was made. He also argues that the officers had not observed *416 any suspicious or criminal activity prior to the determination to stop him.
It was established at trial and at the motion hearing that, at the time of this incident, it was night and the area being patrolled was a "high crime" area known for violent crimes and drug transactions. Officer Decker testified at the suppression hearing and trial that the police vehicle was known in the area. Officer Decker testified that the men "appeared to be interacting strangely," as the two men stopped to talk. According to the testimony of Officer Decker, when the vehicle drove by and was apparently recognized by the subjects, the men attempted to hide behind a U-haul.
When the policemen exited the vehicle, dressed in the Street Crimes uniform, the suspects fled. Milton ran away, and, as he did so, he reached in his waistband, as if to secure a weapon. The police officers ran after Milton. He jumped a fence, fell to the ground, and dropped a gun and contraband. Shortly thereafter, defendant was apprehended by two police officers who were also patrolling the area.
We find that the police were justified in pursuing defendant because under the totality of the circumstances, reasonable suspicion existed for a stop of defendant. It was the evasive activity of the suspects that prompted the officers to stop and investigate. Presence in a high crime area, coupled with nervousness, startled behavior, flight, or suspicious actions upon the approach of officers, is sufficient to justify an investigatory stop. State v. Hill, 01-1372, p. 8 (La.App. 5 Cir. 5/15/02), 821 So.2d 79, 87. Before Milton could be stopped, he abandoned a gun and contraband. This abandoned evidence was lawfully seized. State v. Johnson, 01-2436, pp. 4-5 (La.1/25/02), 806 So.2d 647, 648.
We find that the trial judge correctly denied the defendant's motion to suppress the evidence in this case.
In his second allegation of error, the defendant alleges that the trial court erred in failing to suppress his statement. He contends that the statement he made to Officer Decker and the prosecutor at the scene on July 24, 2000 (after the first day of trial), even if initiated by defendant, nonetheless developed into a police interrogation. Defendant reasons that the officer's statement that he (the officer) had forgotten which alley defendant ran through was in fact a question posed to the defendant. Thus, argues defendant, the statement should have been suppressed because the State failed to show a valid waiver of constitutional rights, including right to counsel and right against self-incrimination.
The State replies that the inculpatory statement was properly admissible because it was not made as a result of police-initiated custodial interrogation, but resulted from the accused's initiated communication. As such, the defendant voluntarily waived his right to counsel and against self-incrimination.
Before the State may introduce a confession or statement for consideration by the jury, the State must prove beyond a reasonable doubt that the statement or confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, and promises. If the statement is made during a custodial interrogation, the State must prove that the declarant was advised of his constitutional rights. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been deprived of his freedom of action in any significant way. Spontaneous and voluntary statements not given as a result *417 of police interrogation or compelling influence, are admissible in evidence without Miranda warnings, even where a defendant is in custody."
. . .
Voluntariness of the statement is to be determined in a case-by-case basis. The trial judge's conclusions regarding the credibility and weight of the testimony relating to the voluntariness of the confession or statement will not be overturned unless they are not supported by the evidence. (Citations omitted.)
State v. Williams, 98-1006, (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 73-74, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
The record in this matter supports the trial judge's findings that the defendant's inculpatory statement was voluntary and not made as a result of police interrogation. Under these circumstances, the defendant voluntarily waived his right to counsel and right against self-incrimination, and, therefore, the trial judge correctly refused to suppress the statement.
In his third allegation of error, the defendant alleges that the trial court erred in failing to grant a mistrial.
Defendant contends that he was entitled to a mistrial under LSA-C.Cr.P. art. 775 because of the prejudicial conduct of the prosecutor and investigating officer in procuring his inculpatory statement. The State responds that, since the defendant initiated the statement of which he complains, no basis exists for a mistrial.
A mistrial shall be ordered and in a jury trial, the jury dismissed, when prejudicial conduct in or outside of the courtroom makes it impossible for the defendant to obtain a fair trial. LSA-C.Cr.P. art. 775. The decision to grant or deny a mistrial is within the sound discretion of the trial court. The denial of a mistrial will not be reversed on appeal unless the court has abused its discretion. State v. Cassard, 01-931, p. 24 (La.App. 5 Cir. 2/26/02), 811 So.2d 1071, 1081.
The statement was made on July 24, 2000 at approximately 8:15 p.m. This occurred after the voir dire of the jury that occurred earlier that day. The prosecutor testified that she was uncertain as to whether she was going to use the statement. On the day before trial, the prosecutor arrived late into her office. She made the decision to use the statement and immediately had the notice of intent to use the statement sent to opposing counsel. Because the statement was voluntarily made by defendant and the prosecutor immediately notified the defendant upon making the decision to use the statement at trial, we find that the trial judge did not abuse his discretion in refusing to grant a mistrial.
In his fourth allegation of error, the defendant alleges that the trial court erred in failing to recuse the prosecutor.
We note that the defendant lodged a motion to disqualify the prosecutor, but withdrew the motion prior to trial. The record clearly indicates that the court was willing to recuse Ms. Benge as the prosecutor in the event the defense counsel chose to call her as a witness. The defense counsel made the conscious decision not to call her as a witness and specifically withdrew his motion for recusal. Therefore, he cannot now be heard to complain that his actions caused him damage. See, State v. Ormond, 00-1371, p. 7 (La.App. 5 Cir. 4/24/01), 786 So.2d 187, 191.
Appellant requests that we review the record for errors patent pursuant to La. C.Cr.P. art. 920; See, State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We *418 have reviewed the record and note the following, which require our consideration.
The trial judge failed to correctly advise the defendant of the prescriptive period for filing for post-conviction relief. Accordingly, we remand this case to the district court and order the trial court to advise the defendant in writing of the prescriptive period under LSA-C.Cr.P. art. 930.8 within ten days of this opinion and file evidence of same in the record.
For the above discussed reasons, the defendant's conviction and sentence are affirmed. The case is remanded for the trial court to inform the defendant of the delays for filing for post-conviction relief.
AFFIRMED AND REMANDED.