# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 12, 2005          Decided November 18, 2005

No. 04-3068

UNITED STATES OF AMERICA,
APPELLEE

v.

ANTHONY THOMAS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00458-01)

*A. J. Kramer*, Federal Public Defender, argued the cause and filed the briefs for appellant. *Michelle M. Peterson*, Assistant Federal Public Defender, entered an appearance.

*John P. Gidez*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *John R. Fisher*, *Roy W. McLeese, III*, and *George P. Eliopoulos*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, and SENTELLE and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*:  Anthony Thomas challenges his conviction for unlawful possession of a firearm by a convicted felon, arguing the district court erred in failing to suppress guns and ammunition found during a "protective sweep" of his apartment.  *See Maryland v. Buie*, 494 U.S. 325 (1990).  In the alternative he challenges the mandatory application of the United States Sentencing Guidelines to determine his sentence. We affirm the order of the district court denying the motion to suppress but, in accordance with *United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005), we remand the record for that court "to determine whether it would have imposed a different sentence, materially more favorable to the defendant, had it been fully aware of the post-*Booker* sentencing regime." *Id.* at 771.

## I.    Background

Between 6:00 and 6:30 one morning, five Deputy U.S. Marshals arrived at an apartment in Washington, D.C. to execute a warrant for the arrest of Anthony Thomas in connection with a parole violation.  The marshals, with weapons drawn, knocked and announced their purpose and the door was opened.

The front door to Thomas' one-bedroom apartment opens immediately into a hallway.  A foot or two to the left is the entrance to the living room and to the right are doorways off the hallway leading to the kitchen, bathroom, and bedroom.  The bedroom door at the far end of the hall is 15 feet from the entrance to the apartment.

The first officers to enter the apartment followed Thomas from the hallway into the living room, where they found two other individuals.  Meanwhile, Deputy Marshal William Martin

and a colleague searched the kitchen, the bathroom, and the bedroom in order "[to make] sure there was nobody else in the immediate area." Upon entering the bedroom, the officers first looked under the bed to see if anyone was hiding there, then turned their attention to an open closet. In plain view on the top closet shelf they saw a shotgun shell and a handgun atop a stack of clothes. At the bottom of the closet, they saw a "big bulked up blanket or comforter," which was "dome shaped" and approximately three feet high. Deputy Martin testified that "a person could have easily fit underneath the comforter." Upon removing the comforter, the officers discovered an assault rifle and a shotgun. From the time the officers entered the apartment until they found the firearms, "not more than a minute" had passed.

Thomas was indicted on a single count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). He moved to suppress as the fruits of an unlawful search both the weapons and ammunition seized from his bedroom and the subsequent statement he made admitting possession of the firearms. After the close of evidence at the suppression hearing, Thomas raised an alternative ground for suppression, namely, that the officers' initial entry into his apartment was unlawful. Deputy Martin had testified that the Marshal's Service learned where Thomas lived after an "investigation was done" and Thomas' address "turned up." Thomas argued this evidence was insufficient to establish that the officers had reason to believe Thomas lived at the address searched or would be present at the time of the search.

The district court denied the motion to suppress in all respects. The court concluded the officers' entry into Thomas' apartment was lawful because, per Deputy Martin's testimony, they had reason to believe Thomas lived at the address searched

and "the early hour [of the arrest] heightened the probabilities of locating the defendant" there. The court upheld the protective sweep because Thomas' bedroom "immediately adjoin[ed]" the place of arrest, that is, "the hallway immediately inside his front door." Thereafter, a jury found Thomas guilty as charged and the district court sentenced him to the minimum 188 months of imprisonment allowed under the Sentencing Guidelines, which specified a range of 188-235 months.

## II. Analysis

Thomas argues the officers' entry into his apartment and their protective sweep of the bedroom violated his right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable searches and seizures. In considering the denial of a motion to suppress, we review *de novo* the district court's conclusions of law, including its determinations of reasonable suspicion and probable cause, but we "review [its] findings of historical fact only for clear error." *See Ornelas v. United States*, 517 U.S. 690, 699 (1996).

## A. The Entry into Thomas' Apartment

An arrest warrant "founded on probable cause" that the suspect has committed a crime gives law enforcement officers "the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). As explicated by five other circuits, the "reason to believe" standard is satisfied by something less than would be required for a finding of "probable cause." *See Valdez v. McPheters*, 172 F.3d 1220, 1225-26 (10th Cir. 1999); *United States v. Route*, 104 F.3d 59, 62 (5th Cir. 1997); *United States v. Risse*, 83 F.3d 212, 216 (8th Cir. 1996); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir.

1995); *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995). That is consistent with our decision in *United States v. May*, 68 F.3d 515 (1995) (Fourth Amendment permits search of suspect's dwelling if officers have "reason to believe the suspect is there"), where we upheld entry into a dwelling based upon an address found in police records and upon testimony that the suspect had slept there on the night of the murder, some two days before the search. *Id.* at 516. The Ninth Circuit alone has held that reason to believe "embodies the same standard of reasonableness inherent in probable cause." *See United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002). We think it more likely, however, that the Supreme Court in *Payton* used a phrase other than "probable cause" because it meant something other than "probable cause."

Accordingly, we expressly hold that an officer executing an arrest warrant may enter a dwelling if he has only a "reasonable belief," falling short of probable cause to believe, the suspect lives there and is present at the time. Applying this standard, the entry into Thomas' apartment was lawful.

Thomas argues the Government's evidence is insufficient to establish the officers had even a reasonable belief he lived, and was then present, in the apartment. Deputy Martin, however, testified the marshals learned Thomas' address after an "investigation was done." Thomas objects that Martin gave no details of the investigation. Although the Government's evidence was succinct, to say the least, the word "investigation," even without details, denotes something at least akin to, as the Government puts it, "a systematic official inquiry," and in any event more than a mere hunch, surmise, or suspicion.

That Thomas was a parolee and the marshals were executing an arrest warrant for a parole violation lends support

to the Government's view. As a condition of his parole, Thomas was required to keep his current address on file with his parole supervision officer. *See* 28 C.F.R. §§ 2.85(a) & 2.204(a)(3), (4)(ii). Therefore, we do not think the absence of testimony about where the marshals got Thomas' address is fatal to the Government's claim of reason to believe Thomas lived in his apartment. Nor did Thomas' counsel think the matter insufficiently obvious to bother questioning Deputy Martin about the details of his investigation.

As for whether the officers had reason to believe Thomas would be at home when they executed the warrant, the early morning hour was reason enough. *See, e.g.*, *May*, 68 F.3d at 516 ("[T]he logical place one would expect to find [defendant] on that ... morning was at his home"); *United States v. Terry*, 702 F.2d 299, 319 (2d Cir. 1983) (agents reasonably concluded suspect would be home on a Sunday morning at 8:45). Accordingly, we hold the officers' entry into Thomas' apartment was in all respects lawful.

B.   The Protective Sweep

Thomas also argues the search of his bedroom exceeded the bounds of a permissible "protective sweep," which the Supreme Court has defined as a "quick and limited search ... incident to an arrest" of spaces where a person may be found, "conducted to protect the safety of police officers or others." *Buie*, 494 U.S. at 327. A protective sweep may last "no longer than is necessary to dispel the reasonable suspicion of danger" and "no longer than it takes to complete the arrest and depart the premises." *Id.* at 335-36.

The Supreme Court in *Buie* recognized two kinds of protective sweeps. The first may be conducted "as a

precautionary matter" and without probable cause or reasonable suspicion, but it must be limited to "spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. The second may extend beyond immediately adjoining spaces but must be based upon "articulable facts which ... would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

The Government does not claim the officers conducted the second type of sweep described in *Buie*; it points to no facts suggesting the officers had a reasonable belief that a person posing a threat to them was in the apartment. The only issue, therefore, is whether Thomas' bedroom was a place "immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.*

Although Thomas was formally placed under arrest in the living room, he was arrested, for the practical purpose of the Fourth Amendment, when he was "apprehended ... at gun-point," *In re Sealed Case*, 153 F.3d 759, 767 n.3 (D.C. Cir. 1998), in the hallway immediately inside his front door. And, as the district court found, every room swept "could be immediately accessed from the hallway." Because the entrance to the bedroom was a straight shot down the hallway from the spot where Thomas was arrested, the bedroom was a place "immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334; *see also United States v. Ford*, 56 F.3d 265, 270 (D.C. Cir. 1995) ("because the arrest took place in the hallway, and the bedroom from which Ford emerged was immediately adjoining the hallway, [the agent] could legitimately look in the bedroom for potential attackers").

Thomas argues his "place of arrest" was just the area "inside of the front door," not the entire hallway of which it was a part, and therefore the bedroom did not "immediately adjoin[]" the place of arrest. According to Thomas, the immediately adjoining spaces "included at most the living room, and the front hallway." Otherwise, in a small apartment such as this one the "police would be entitled to sweep the entire premises without a showing of reasonable suspicion."

We think Thomas' concept of the place of arrest is unreasonably narrow. He points to no case where the place of arrest has been defined more narrowly than the entirety of the room in which the arrest occurred. Nor should we narrowly define the place of arrest, as Thomas suggests, citing *United States v. Curtis*, 239 F. Supp. 2d 1 (D.D.C. 2002), merely in order to avoid permitting the police to sweep the entirety of a small apartment. The safety of the officers, not the percentage of the home searched, is the relevant criterion. *Buie*, 494 U.S. at 327 (purpose of protective sweep is "to protect the safety of police officers or others"). If an apartment is small enough that all of it "immediately adjoin[s] the place of arrest" and all of it constitutes a space or spaces "from which an attack could be immediately launched," *id.* at 334, then the entire apartment is subject to a limited sweep of spaces where a person may be found.

Thomas also argues that because he was apprehended immediately inside the entrance to his apartment, the protective sweep was unnecessary to complete his arrest; he could have been moved outside forthwith. The sweep was necessary to complete the arrest safely, however, because in fact Thomas and the officers had moved into the living room before the officers had him under their control and formally placed him under arrest. The officers therefore had to depart through the hallway,

and they need not have done so without first taking the precautionary measure of a limited protective sweep to avert a potential attack from one of the rooms adjoining the hallway.

In sum, the search of Thomas' bedroom was a lawful "protective sweep." Therefore, the district court properly denied his motion to suppress the physical evidence found in Thomas' bedroom and the statement he made to a government agent following his arrest.

C.   The Sentence

Thomas, who was sentenced prior to the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), did not challenge the mandatory application of the Sentencing Guidelines to him until his case was on appeal. Therefore, we review his sentence only for plain error. *See Coles*, 403 F.3d at 767.

At sentencing the district court commented that application of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), "leads to a harsh result, but it's a harsh result that has been determined by Congress and by the [G]uidelines and it's not one that the Court can avoid based on the facts that are before it." Consequently, as Thomas argues and the Government concedes, it is unclear whether the district court would have exercised its discretion to sentence Thomas to less than 188 months if it had not believed itself bound by the Guidelines. As in *Coles*, therefore, and as Thomas requests, we remand the record to the district court "for the limited purpose of allowing it to determine whether it would have imposed a different sentence, materially more favorable to [Thomas], had it been fully aware of the post-*Booker* sentencing regime." *Id.* at 771.

### III.  Conclusion

For the foregoing reasons, Thomas' conviction is affirmed and this court will retain jurisdiction while the record is remanded to the district court pursuant to *Coles*.

*So ordered.*