**FILED**

**November 14, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0396 – *State of West Virginia v. Tracy Renee Pennington*

WOOTON, Justice, dissenting:

In this case, the petitioner Tracy Renee Pennington challenged the legality of a search of her private home by a law enforcement officer executing a juvenile pick-up order (arrest warrant) for the petitioner's daughter. Law enforcement had neither consent to enter the home nor a search warrant, and the petitioner argued that the officer lacked the requisite "reason to believe" that the juvenile was in the home. *See Payton v. New York*, 445 U.S. 573 (1980). The determinative issue in this case is what legal standard controls law enforcement's right to enter a private residence without a search warrant in order to execute a juvenile pick up order. The petitioner argued that probable cause was the standard; conversely, the respondent, State of West Virginia ("the State"), argued[1] for the adoption of either a "reasonable suspicion"[2] standard or simply a standard that was

---

[1] The State also argued that this Court's prior decision in *State v. Slaman*, 189 W. Va. 297, 431 S.E.2d 91 (1993) (per curiam), is controlling. However, in *Slaman* this Court did not even mention *Payton* or the United States Supreme Court's subsequent holding in *Steagald v. U. S.*, 451 U.S. 204 (1981), both decisions discussed *infra* in greater detail, and the case was devoid of any analysis in regard to the quantum of proof needed to support a warrantless entry into a home. Thus, the case has very little, if any, precedential value.

[2] *See Terry v. Ohio*, 392 U.S. 1, 27 (1968) (finding "authority to permit a reasonable search for weapons for the protection of the police officer, where he has *reason to believe* that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.") (emphasis added); *see also Maryland v. Buie*, 494 U.S. 325, 336-37 (1990) (A limited protective sweep is permitted when an officer has "reasonable belief" that a dangerous individual is in the area.).

something less than probable cause.[3] The majority establishes a new standard – one with the vaguest of factors, holding in syllabus point three that "[l]aw enforcement executing a valid arrest warrant may lawfully enter a residence if they have reason to believe that the subject of the warrant lives there and is presently within. *Reason to believe requires less proof than probable cause and is established by evaluating the totality of the circumstances*." (Emphasis added). Insofar as this new standard allows law enforcement officers to make a warrantless entry into a private home to execute a juvenile pick-up order without probable cause, it diminishes the protections afforded by the Fourth Amendment. Even assuming, arguendo, that this new standard is constitutionally sound, the petitioner's motion to suppress should have been granted under the facts and circumstances of this case. Accordingly, I respectfully dissent.

The Fourth Amendment of the United States Constitution protects citizens from unreasonable intrusions into their homes:

---

[3] *See U.S. v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005) ("As explicated by five other circuits, the 'reason to believe' standard is satisfied by something less than would be required for a finding of 'probable cause.' *See Valdez v. McPheters*, 172 F.3d 1220, 1225-26 (10th Cir.1999); *United States v. Route*, 104 F.3d 59, 62 (5th Cir.1997); *United States v. Risse*, 83 F.3d 212, 216 (8th Cir.1996); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir.1995); *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995). That is consistent with our decision in *United States v. May*, 68 F.3d 515 (1995) (Fourth Amendment permits search of suspect's dwelling if officers have 'reason to believe the suspect is there'), where we upheld entry into a dwelling based upon an address found in police records and upon testimony that the suspect had slept there on the night of the murder, some two days before the search. *Id*. at 516.").

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.; *accord* W. Va. Const., art. III, § 6 (providing nearly identical protections as afforded in the federal constitution). The United States Supreme Court has recognized that

> the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752. And we have long adhered to the view that the warrant procedure minimizes the danger of needless intrusions of that sort.

*Payton*, 445 U.S. at 585-86. In no uncertain terms, the Supreme Court explained in *Payton* that "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant *are presumptively unreasonable.*" *Id*. at 586 (emphasis added).

> "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). At the Amendment's "very core," we have said, "stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Collins v. Virginia*, 584 U. S. ——, ——, 138 S.Ct. 1663, 1670, 201 L.Ed.2d 9 (2018) (internal quotation marks

3

omitted). Or again: "Freedom" in one's own "dwelling is the archetype of the privacy protection secured by the Fourth Amendment"; conversely, "physical entry of the home is the chief evil against which [it] is directed." *Payton v. New York*, 445 U.S. 573, 585, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (internal quotation marks omitted). The Amendment thus "draw[s] a firm line at the entrance to the house." *Id*., at 590, 100 S.Ct. 1371. What lies behind that line is of course not inviolable. An officer may always enter a home with a proper warrant. And as just described, exigent circumstances allow even warrantless intrusions. *See ibid*.; *supra*, at 2017-2018. But the contours of that or any other warrant exception permitting home entry are "jealously and carefully drawn," in keeping with the "centuries-old principle" that the "home is entitled to special protection." *Georgia v. Randolph*, 547 U.S. 103, 109, 115, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) (internal quotation marks omitted); *see Caniglia v. Strom*, 593 U. S. —— ——, ——, 141 S.Ct. 1596, 1600, —— L.Ed.2d —— (2021) ("[T]his Court has repeatedly declined to expand the scope" of "exceptions to the warrant requirement to permit warrantless entry into the home"). So *we are not eager—more the reverse—to print a new permission slip for entering the home without a warrant*.

*Lange v. California*, 141 S.Ct. 2011, 2018-19 (2021) (emphasis added). Yet, "a new permission slip for entering the home without a warrant" is exactly what the State sought and received from the majority in the instant case. *See id*.

To fully explain my misgivings with the standard adopted by the majority, I begin with an examination of *Payton*, where the Supreme Court considered "the constitutionality of New York statutes that authorize police officers to enter a private residence without a warrant and with force, if necessary, to make a routine felony arrest." *Id*. at 574. The Supreme Court found that

4

> [i]f there is sufficient evidence of a citizen's participation in a felony[4] to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives *when there is reason to believe the suspect is within.*

*Id*. at 602-03 (footnote and emphasis added). Notably, the *Payton* court was discussing felonies, not juvenile status offenses. Further, the Supreme Court failed to define or otherwise give any guidance to what is meant by "reason to believe" – whether that concept is tantamount to probable cause, reasonable suspicion, or something else. Finally, in *Payton*, while the police had probable cause to arrest each of the suspects for their respective crimes (murder and armed robbery), they had not obtained either arrest warrants or search warrants at the time they entered the suspect's respective apartments. *Id*. at 577-78. Based on the officers' failure to obtain an arrest warrant, the Supreme Court reversed the cases and remanded for further proceedings. *Id*. at 603.

---

[4] Federal courts have determined that the *Payton* "reason to believe" standard applies equally to the execution of a misdemeanor arrest warrant. *See U. S. v. Gooch*, 506 F.3d 1156, 1159 (9th Cir. 2007) ("We hold that a valid arrest warrant issued by a neutral magistrate judge, including a properly issued bench warrant for failure to appear, carries with it the limited authority to enter a residence in order to effectuate the arrest as provided for under Payton."); *U.S. v. Spencer*, 684 F.2d 220, 223 (2d Cir. 1982) (rejecting the defendant's request that *Payton* should be confined to a felony and finding that the issuance of a warrant for a felony, misdemeanor, or a bench warrant by a neutral magistrate or court controls a warrantless entry into the suspect's residence to effect the arrest warrant).

Following *Payton*, the Supreme Court addressed the issue of whether officers who had obtained a felony arrest warrant for an individual could enter the home of a third party to execute that warrant. *See Steagald,* 451 U.S. 204. In *Steagald*, the officers had an arrest warrant for Ricky Lyons. An informant called a Drug Enforcement Administration ("DEA") agent and gave the agent a telephone number where Mr. Lyons could be reached. The agent traced the number to an address in Atlanta, Georgia. Law enforcement officers went to that address and approached two men standing outside the house, one of whom was Gary Steagald. *Id*. at 206. The officers proceeded to enter the house without a search warrant and discovered what they believed to be cocaine. At that point they sent another officer to obtain a search warrant, but before it was secured they conducted a second search of the home, yielding additional incriminating evidence. During a third search of the home – this time with a search warrant – the officers found forty-three pounds of cocaine. *Id*. at 206-07. The petitioner, Mr. Steagald, was arrested and indicted on federal drug charges. *Id*. at 207.

Mr. Steagald moved to suppress all the evidence found in the house due to the officers' failure to secure a search warrant before entering the residence. The government argued that the arrest warrant for Mr. Lyons authorized the officers' entry into Mr. Steagald's home. The Supreme Court framed the issue before it as "whether an arrest warrant – as opposed to a search warrant – is adequate to protect the Fourth Amendment

interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances."[5]  *Id*. at 212.

The *Steagald* court found the warrantless entry into the petitioner's home to be unreasonable.  *Id*. at 222.  It emphasized the need for a warrant absent consent or exigent circumstances as follows:

> The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search. As we have often explained, the placement of this checkpoint between the Government and the citizen implicitly acknowledges that an "officer engaged in the often competitive enterprise of ferreting out crime," *Johnson v. United States*, *supra*, 333 U.S. at 14, 68 S.Ct., at 369, may lack sufficient objectivity to weigh correctly the strength of the evidence supporting the contemplated action against the individual's interests in protecting his own liberty and the privacy of his home. *Coolidge v. New Hampshire*, *supra*, 403 U.S., at 449-451, 91 S.Ct., at 2029-2030; *McDonald v. United States*, 335 U.S. 451, 455-456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948). However, while an arrest warrant and a search warrant both serve to subject the probable-cause determination of the police to judicial review, the interests protected by the two warrants differ. An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast is issued upon a showing of probable cause to believe that the legitimate object of a

---

[5] The Supreme Court mentioned a split in the federal circuits in regard to whether both an arrest warrant and a search warrant are required before law enforcement may enter a third party's residence, or whether an arrest warrant is sufficient if the officers have "reason to believe" the person to be arrested is within the home to be searched.  *Steagald*, 451 U.S. at  207 n.3.

search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.

*Steagald*, 451 U.S. at 212-13. The Court acknowledged that while the arrest warrant protected Mr. Lyons from an unreasonable seizure, it did nothing to protect the petitioner's privacy and his Fourth Amendment right to be free from an unreasonable search of his home. *Id*. at 213.

Moreover, the *Steagald* court warned against the dangers of foregoing the warrant requirement where a third-party's home was to be searched in order to execute an arrest warrant, noting that

the police, acting alone and in the absence of exigent circumstances, may decide when there is sufficient justification for searching the home of a third party for the subject of an arrest warrant—would create a significant potential for abuse. Armed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances. *See*, e. g., *Lankford v. Gelston*, 364 F.2d 197 (CA4 1966) (enjoining police practice under which 300 homes were searched pursuant to arrest warrants for two fugitives). Moreover, an arrest warrant may serve as the pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place. *Cf. Chimel v. California*, 395 U.S. 752, 767, 89 S.Ct. 2034, 2042, 23 L.Ed.2d 685 (1969).

*Steagald*, 461 U.S. at 215.

The Supreme Court has determined that the *Payton* "reason to believe" standard governs the execution of an arrest warrant at a *suspect's* residence and eliminates the need for law enforcement officials to obtain a search warrant to enter that residence so long as the officer has "reason to believe" the suspect is inside. *See Payton*, 445 U.S. at 602-03. However, where law enforcement officials seek to enter a third-party's home to execute a warrant on a suspect who is not a resident, then absent consent or exigent circumstances they must obtain a search warrant based on probable cause to enter the third-party's home to execute the arrest warrant. *Steagald*, 451 U.S. at 222.

Recently, the United States Court of Appeals for the Fourth Circuit addressed the very issue now before us: the quantum of proof that the "reasonable belief" standard requires. *U.S. v. Brinkley*, 980 F.3d 377, 385 (2020). The Fourth Circuit first recognized that

> [t]he courts of appeals have unanimously interpreted *Payton's* standard — "reason to believe the suspect is within," 445 U.S. at 603, 100 S.Ct. 1371 — to require a two-prong test: the officers must have reason to believe both (1) "that the location is the defendant's residence" and (2) "that he [will] be home" when they enter. *United States v. Hill*, 649 F.3d 258, 262 (4th Cir. 2011). But the quantum of proof necessary to satisfy *Payton* has divided the circuits, with some construing "reason to believe" to demand less than probable cause and others equating the two standards.[6] *See United States v.*

---

[6] The dissenter in *Brinkley* noted the continuing split in federal circuits as to what standard controls:

*Vasquez-Algarin*, 821 F.3d 467, 474–77 (3d Cir. 2016) (collecting cases).

*Brinkley*, 980 F.3d at 384 (footnoted added). The court also observed that

> *Steagald* sheds particular light on how *Payton* must be interpreted to respect the home's privileged status under the Fourth Amendment. As noted above, when officers armed with an arrest warrant seek to apprehend the suspect in a third party's home, *Steagald*, not *Payton*, controls, and requires police to obtain a search warrant founded on probable cause in order to enter the home. But *Payton* controls when officers believe that the suspect resides in a certain home, even if they are mistaken. *See Vasquez-Algarin*, 821 F.3d at 472. Under these circumstances, the home's actual residents are no longer entitled to the judicial authorization founded on probable cause that *Steagald* guarantees; *Payton's* "reason to believe" standard is all that protects their weighty Fourth Amendment privacy interests. Thus, when police seek to enter a home and are uncertain whether the suspect resides there, interpreting reasonable belief to require less than probable cause "would

---

> [s]ome circuits have equated "reason to believe" and "probable cause." *See United States v. Vasquez-Algarin*, 821 F.3d 467, 480 (3d Cir. 2016); *United States v. Gorman*, 314 F.3d 1105, 1111 (9th Cir. 2002). Others have suggested the same in dicta. *See United States v. Jackson*, 576 F.3d 465, 469 (7th Cir. 2009); *United States v. Hardin*, 539 F.3d 404, 416 n.6 (6th Cir. 2008). On the other hand, some circuits have found that the "reason to believe" standard is less stringent than the "probable cause" standard. *See United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005); *Valdez v. McPheters*, 172 F.3d 1220, 1225 n.5 (10th Cir. 1999); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995); *United States v. Werra*, 638 F.3d 326, 337 (1st Cir. 2011). And still others have side-stepped the problem. *See United States v. Barrera*, 464 F.3d 496, 501 n.5 (5th Cir. 2006); *United States v. Risse*, 83 F.3d 212, 216 (8th Cir. 1996); *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995).

*Brinkley*, 980 F.3d at 395 n.2 (dissenting opinion).

effect an end-run around . . . *Steagald* and render all private homes . . . susceptible to search by dint of mere suspicion or uncorroborated information and without the benefit of any judicial determination." *Id*. at 480.

It seems to us that interpreting reasonable belief to require probable cause hews most closely to Supreme Court precedent and most faithfully implements the special protections that the Fourth Amendment affords the home. For these reasons, we join those courts "that have held that reasonable belief in the *Payton* context 'embodies the same standard of reasonableness inherent in probable cause.'" *Id*. (quoting *United States v. Gorman*, 314 F.3d 1105, 1111 (9th Cir. 2002)).

*Brinkley*, 980 F.3d at 385-86.

I believe that the quantum of proof standard adopted by the Fourth Circuit – reason to believe is tantamount to probable cause – should have controlled the resolution of this case. The probable cause standard is the surest way to protect the Fourth Amendment rights of private homeowners to be secure in their homes, free from unreasonable searches and seizures, as required by both the State and federal constitutions. The lesser standard adopted by the majority weakens citizens' Fourth Amendment rights by allowing as a matter of routine the type a search that occurred herein – one in which police can enter a private home and search without a warrant based solely on a "'dint of mere suspicion or uncorroborated information and without the benefit of any judicial determination.'" *Brinkley*, 980 F.3d at 386 (quoting *Vasquez-Algarin*, 821 F.3d at 480).

Significantly, the State conceded that probable cause did not exist in this case, and that it could not prevail under that standard because the only basis for searching the petitioner's home was an anonymous tip, which is insufficient to support a probable cause determination. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000) ("'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,' *Alabama v. White*, 496 U.S., at 329, 110 S.Ct. 2412. As we have recognized, there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.' *Id.*, at 327, 110 S.Ct. 2412."). However, in this case the deputy did not even try to verify or corroborate the anonymous tip before acting upon it. Thus, the petitioner's motion to suppress should have been granted as the search was unreasonable under the Fourth Amendment.

Even with the majority's adoption of a weaker "reason to believe" quantum of proof, I would find that the State failed to carry its burden. The facts of this case established that by order entered on November 5, 2018,[7] the Circuit Court of Jackson County placed the juvenile in a temporary guardianship with her grandparents in Kanawha

---

[7] While the order was entered was November 5, 2018, the order states that a hearing was held in the matter on November 29, 2018. It is unclear exactly when the parties agreed that the juvenile would live with her grandparents or when she was actually placed in her grandparents' custody. Suffice it to say that the transfer of custody occurred in November of 2018.

County because of continuing issues with unexcused absences from school.[8] It is clear that from and after November, 2018, the juvenile's legal residence was at her grandparents' home in Kanawha County until such time as the temporary guardianship ceased.

On January 11, 2019, the prosecutor in Jackson County filed an emergency motion for the juvenile to be taken into custody and placed in a staff-secured facility. It was alleged that the juvenile had left her grandparents' residence in Kanawha County on December 7, 2018, without permission, and had not returned to their home. By order entered January 11, 2019, the circuit court directed that the juvenile be taken into custody and placed with the Department of Health and Human Resources ("DHHR") for placement in a staff-secured facility pending further hearings.

The evidence established that the DHHR and local law enforcement made several trips to the petitioner's home trying, unsuccessfully, to locate the juvenile. There was also evidence that other "sporadic tips regarding her whereabouts" were investigated, but she was not found. On May 16, 2019, some five months after the juvenile pick-up order had been issued, Chief Deputy R. H. Mellinger of the Jackson County Sheriff's Department relayed an anonymous tip he had received to Deputy Ben DeWees, also with the department, which tip indicated that the juvenile was seen at the petitioner's apartment

---

[8] The juvenile previously had been adjudicated as a status offender in July of 2018 due to truancy issues.

and that the petitioner planned to hide her until she turned eighteen. Deputy DeWees testified that he proceeded to the petitioner's apartment because "we had credible information that she was there, and we had a pickup order." However, he admitted that he knew nothing about the so-called "credible source" of the tip, or whether the information indeed was credible.

Deputy DeWees arrived at the petitioner's home. He knocked on the door and no one answered, although the deputy stated that heard movement inside the apartment. He testified that he entered the apartment without obtaining a search warrant after speaking with the prosecutor, who said it was okay. He initially found both the petitioner and her co-defendant, G.W., inside. The juvenile was located "inside a hollowed-out chest of drawers inside the Apartment" and was taken into custody. Significantly, the deputy stated that he never saw the juvenile around or near the petitioner's residence before he entered; that the petitioner never consented to his entry; that he had no knowledge of any evidence that was going to be destroyed if he did not enter the home; that he had no knowledge that the juvenile was actually in harm's way; and that the only reason the authorities wanted to find her was *because they didn't know where she was*.

Additionally, a youth service worker ("worker") for the DHHR testified that at the time the pick-up order was issued, the juvenile resided with her grandparents. The worker stated that although she had been to the petitioner's home several times after the

juvenile ran away from her grandparents' home, she never entered the residence and had never found the juvenile at the residence. The worker also testified that there had been tips where "people would say they had seen [the juvenile]" at the grandparents' house or at the petitioner's home, but these "tips" never prompted law enforcement or the worker to enter either home.

Given this evidence, it is incomprehensible that the majority has upheld the circuit court's determination that the deputy had reason to believe that the juvenile was at the petitioner's home. The deputy's entrance into the petitioner's home was based exclusively on an anonymous tip, unsupported by any evidence as to credibility of either the tipster or the information. An anonymous, unverified tip is insufficient to support reasonable suspicion, let alone reason to believe that the juvenile was inside the petitioner's home. It is undisputed that the petitioner's home was not the juvenile's legal residence and had not been for more than five months; further, the testimony about the various "tips" received during this period demonstrated that the juvenile was, at minimum, bouncing around perhaps to avoid being found. With so much uncertainty as to where the juvenile was, a single anonymous, unsubstantiated tip relayed to a deputy is wholly insufficient to justify a law enforcement officer's entry into, and search of, a private residence. Consequently, the motion to suppress should have been granted because the search conducted violated the petitioner's Fourth Amendment rights.

For all the foregoing reasons, I respectfully dissent.